IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| THE NATIONAL FEDERATION<br>OF THE BLIND, INC.,<br>  At Jernigan Place<br>Baltimore, MD 21230, | *<br><br>*<br><br>* | |
| KENNETH CAPONE,<br>7305 Maplecrest Road, Unit 105<br>Elkridge, MD 21075 | *<br><br>*<br>* | Civil Action No.:_____ |
| MELISSA RICCOBONO,<br>1026 E. 36th Street<br>Baltimore, MD 21218 | *<br><br>* | |
| and | * | |
| JANICE TOOTHMAN,<br>12608 Milburn Lane<br>Bowie, MD 20715 | *<br><br>* | |
| Plaintiffs, | *<br><br>* | |
| v. | * | |
| LINDA H. LAMONE,<br>STATE ADMINISTRATOR, STATE<br>BOARD OF ELECTIONS,<br>in her official capacity,<br>151 West Street, Suite 200<br>Annapolis, MD 21401, | *<br><br>*<br><br>* | |
| BOBBIE S. MACK,<br>CHAIRMAN, STATE BOARD OF<br>ELECTIONS, in his official capacity,<br>151 West Street, Suite 200<br>Annapolis, MD 21401, | *<br><br>*<br><br>* | |
| DAVID J. MCMANUS, JR.,<br>VICE CHAIRMAN, STATE BOARD OF<br>ELECTIONS, in his official capacity,<br>151 West Street, Suite 200<br>Annapolis, MD 21401, | *<br><br>*<br><br>* | |

| | |
|---|---|
| PATRICK J. HOGAN,<br>MEMBER, STATE BOARD OF<br>ELECTIONS, in his official capacity,<br>151 West Street, Suite 200<br>Annapolis, MD 21401, | *<br><br>*<br><br>* |
| RACHEL T. MCGUCKIAN,<br>MEMBER, STATE BOARD OF<br>ELECTIONS, in her official capacity,<br>151 West Street, Suite 200<br>Annapolis, MD 21401, | *<br><br>*<br><br>* |
| and | * |
| CHARLES E. THOMANN,<br>MEMBER, STATE BOARD OF<br>ELECTIONS, in his official capacity,<br>151 West Street, Suite 200<br>Annapolis, MD 21401 | *<br><br>*<br><br>* |
| Defendants. | * |

\* \* \* \* \* oo0oo \* \* \* \* \*

## COMPLAINT

### INTRODUCTION

1. Plaintiffs the National Federation of the Blind ("NFB"), Kenneth Capone, Melissa Riccobono, and Janice Toothman bring this action against Defendants Linda H. Lamone, in her official capacity as State Administrator of the Maryland State Board of Elections ("the Board"), Bobbie S. Mack, in his official capacity as Chairman of the Board, David J. McManus, Jr., in his official capacity as Vice Chairman of the Board, and Patrick J. Hogan, Rachel T. McGuckian, and Charles E. Thomann, in their official capacities as members of the Board, for denying individuals with disabilities an equal opportunity to cast their votes through the use of an online absentee ballot marking tool in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.  On the basis of these violations, Plaintiffs seek a declaratory

2

judgment, preliminary and permanent injunctive relief, attorneys' fees and costs, and any other available relief.

2. Plaintiffs, a blind advocacy organization and several individuals with disabilities who are registered to vote in Maryland, desire to exercise their right to vote in the same way as individuals without disabilities.

3. Although the Board has access to technology that would provide Plaintiffs and other individuals who are blind or who have dexterity impairments the opportunity to cast their votes through absentee ballots privately, independently, and effectively, as able-bodied individuals may do, the Board has refused to make this technology available to voters.

4. Because individuals without disabilities may cast their votes privately, independently, and effectively, the ADA and Section 504 require the Board to provide individuals with disabilities an equal opportunity to do the same.

## JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claims arise under the ADA and Section 504.

## PARTIES

6. The National Federation of the Blind, the oldest and largest national organization of blind persons, is a 501(c)(3) non-profit corporation duly organized under the laws of the District of Columbia and headquartered in Baltimore, Maryland. It has affiliates in all 50 states, Washington, D.C., and Puerto Rico. The NFB and its affiliates are widely recognized by the public, Congress, executive agencies of state and federal governments, and the courts as a collective and representative voice on behalf of blind Americans and their families. The organization promotes the general welfare of the blind by assisting the blind in their efforts to

integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and community life, transportation, and recreation.  The NFB has many blind members who are registered to vote in Maryland and wish to exercise their right to vote through the use of an absentee ballot.

7.  The ultimate purpose of the National Federation of the Blind is the complete integration of the blind into society on a basis of equality.  This objective includes the removal of legal, economic, and social discrimination.  As part of its mission and to achieve these goals, the NFB has worked actively to ensure that the blind have an equal opportunity to cast their votes privately and independently by collaborating with developers of voting technology to ensure accessibility for the blind.  In particular, the NFB has devoted extensive resources—resources that have been diverted from other important projects—to helping the Maryland State Board of Elections make its online absentee ballot marker tool accessible for blind individuals.

8.  Kenneth Capone is registered to vote in Maryland as a Republican.  Mr. Capone has cerebral palsy and is unable to use his arms or legs.  He also cannot use his voice to speak.  He uses a wheelchair to ambulate.  To access computers and his tablet device, Mr. Capone wears a head stick that allows him to type and navigate screens without use of his hands.  Mr. Capone lives in Elkridge, Maryland and plans to vote in the June 24, 2014 Republican primary elections.  He wants to vote by absentee ballot and would like to be able to do so privately and independently.  Mr. Capone cannot vote at his polling location without assistance because the voting machines do not work with his head stick.

9.  Melissa Riccobono is registered to vote in Maryland as a Democrat.  She is blind and serves as president of the NFB of Maryland.  She is also a member of the NFB.

4

Ms. Riccobono accesses text on her computer and smartphone through the use of screen access software, which transmits textual information on a computer, tablet, or smartphone screen into an audio output or a refreshable Braille display pad.  Ms. Riccobono uses both the audio output and Braille display to navigate and read electronic text.  She resides in Baltimore, Maryland and plans to vote by absentee ballot in the June 24, 2014 Democratic primary elections.

Ms. Riccobono would like to cast her absentee vote privately and independently.  Because Braille is Ms. Riccobono's preferred method of reading, she wishes to review the ballot and cast her vote through the use of her refreshable Braille display.  The voting machines at polling locations do not work with refreshable Braille displays.

      10.     Janice Toothman is registered to vote in Maryland as a Democrat.  She is deaf-blind.  Her permanent residence is in Bowie, Maryland, although she is currently living in Baltimore temporarily.  Ms. Toothman uses screen access software to access text on her computer, which she uses with either an audio output or her refreshable Braille display.  She plans to vote in the June 24, 2014 Democratic primary elections.  Ms. Toothman wants to vote by absentee ballot and would like to be able to do so privately and independently.  Although Ms. Toothman has some limited hearing, her hearing range is very low and is greatly reduced when there is background noise.  When she tries to vote at her polling location, she often cannot hear the voting machine's audio output clearly.  Ms. Toothman can vote effectively only with the use of her refreshable Braille display.

      11.     The Maryland State Board of Elections is an agency created, authorized, and existing under the laws of the State of Maryland.  The Board and its members are responsible for managing and supervising elections in Maryland and ensuring compliance with the requirements of applicable state and federal law, including the ADA and Section 504.  The Board's five

members are appointed by the Governor of Maryland, with the advice and consent of the Maryland Senate.

12. The Board receives federal financial assistance in many forms, including, but not limited to, direct grants of assistance to develop voting technology, and is therefore required to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

13. Defendant Linda H. Lamone is the State Administrator of the Board, and as such is employed as an officer, employee, and agent of the Board. Ms. Lamone serves as the chief election official for Maryland. Her office is located in Annapolis, Maryland. Ms. Lamone is sued in her official capacity.

14. Defendant Bobbie S. Mack serves as the Chairman of the Board and is sued in his official capacity.

15. Defendant David J. McManus, Jr. serves as Vice Chairman of the Board and is sued in his official capacity.

16. Defendants Patrick J. Hogan, Rachel T. McGuckian, and Charles E. Thomann serve as members of the Board and are sued in their official capacities.

## FACTUAL ALLEGATIONS

### Background on absentee voting in Maryland

17. Any Maryland registered voter can choose to cast her vote through an absentee ballot. Maryland does not require absentee voters to provide a reason for their decision to vote absentee instead of in-person.

18. The Board allows absentee voters to select how they would like to receive their absentee ballots. Voters can choose to have the ballots mailed or faxed to them or they can elect to download the ballot from the Board's website ("electronic delivery").

19. Voters who choose electronic delivery of their absentee ballots must print the blank ballot, mark their choices by hand, and mail or hand deliver the ballot to the voter's local board of elections. Voters who receive the ballots by mail or fax must also mark the ballots by hand and return them to their local board of elections by mail or hand delivery.

20. The Board has allowed voters to receive their absentee ballots through electronic delivery for several years.

21. In 2011, the Board applied for and received a grant of $653,719 from the Federal Voting Assistance Program, a unit of the United States Department of Defense, to develop, among other types of voting technology, an online ballot marking tool.

22. In its grant application, the Board explained that an online ballot marking tool would "improve the accuracy and readability of the voter's voted ballot as it will be designed to prevent overvotes and other voter errors, decrease the likelihood that an election official has to determine the intent of the voter, and increase the voter satisfaction with the voting process."

23. Using that grant, the Board developed an online ballot marking tool that allows voters to make their voting selections on their computers, review a summary screen showing their selections, and print out the ballot with their selections marked. The ballot marking tool notifies voters if they select too few or too many options ("undervoting" and "overvoting" respectively) and gives voters an opportunity to correct their ballots accordingly. The ballot marking tool also generates a barcode encapsulating the voter's sections that is printed onto the hard copy absentee ballot.

24. When an electronically-delivered ballot that has been completed through the use of the online ballot marker tool is returned, it reduces the burden on local boards of elections. The optical-scan voting systems used by local boards of elections to record and tabulate absentee

ballots cannot read the electronically-delivered absentee ballot forms that are marked by hand and mailed to the local boards.  To read and record the ballot selections, the optical scanner requires heavier paper and printed "timing marks."  Therefore, to record votes from electronically-delivered absentee ballots, the local boards have a bipartisan duplication team copy, by hand, the voting selections marked on the paper ballot onto a ballot card that is readable by the optical scanner.  This manual duplication of electronically-delivered absentee ballots creates an administrative burden for the staffs of local boards of elections.  When an electronically-delivered ballot that has been completed through the use of the online ballot marker tool is returned, however, local board of elections staff can simply scan the barcode to create a duplicate ballot for use with the optical-scan voting systeMs.  Thus, use of the online ballot marking tool eliminates the need for a bipartisan duplication team to manually copy the ballot.

25. The Board offered the online ballot marking tool as an option to uniformed military personnel and overseas civilians (voters covered under the Uniformed and Overseas Civilian Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. §§1973ff-1973ff-6) during the 2012 general election.  The Board will not offer the online ballot marking tool to Plaintiffs in the 2014 primary election.  Upon information and belief, the Board also will not make the online ballot marking tool available to UOCAVA voters in this election.

**Accessibility of absentee voting**

26. Paper absentee ballots are not accessible to individuals who are blind or who have certain dexterity impairments.  Blind voters like Ms. Riccobono and Ms. Toothman cannot read printed text and individuals with dexterity impairments like Mr. Capone cannot use a pen or pencil to mark their paper ballots.  Thus, Plaintiffs and other individuals who are blind or have

dexterity impairments need the assistance of another person to read and mark their paper absentee ballots. The current system of requiring voters to select their choices by hand on a paper ballot does not provide Plaintiffs or others with similar disabilities the opportunity to cast their absentee votes privately and independently, although the Board offers non-disabled voters the opportunity to do so.

27. From the fall of 2013 through the winter of 2014, NFB staff members worked with the Board's employees to correct problems with the online ballot marker tool to ensure its accessibility for individuals using assistive technology to access content visually displayed on their computers. Thanks to this collaboration, the Board now has an online ballot marker tool that is fully accessible for blind individuals and others with print disabilities.

28. If the online ballot marker tool were made available, Plaintiffs could use the tool to cast their absentee votes privately and independently. Ms. Riccobono and Ms. Toothman could use their screen access software and refreshable Braille displays to read and make their selections online. Mr. Capone could use his head stick to navigate the electronic ballot and cast his vote. The signature page prints separately from the ballot page, thus preserving the privacy of a voter who needs assistance signing.

29. For Mr. Capone, the online ballot marking tool represents the only method by which he can vote without the assistance of another individual. For Ms. Riccobono and Ms. Toothman, use of the online ballot marker took would provide them with a more effective and thus more equal opportunity to cast their vote.

**Board's refusal to offer the online marking tool**

30. In 2013, the Maryland legislature passed Senate Bill 279, entitled "Improving Access to Voting." The act authorized the Board to give absentee voters the choice to receive

9

their ballots by mail, fax, internet, or by hand. It also required the Board to certify that the online ballot marking tool satisfied certain statutory certification requirements prior to making it available to the public.

31.	In advance of the Board's vote on certifying the online ballot marking tool, numerous interested parties submitted letters to the Board advocating for and against certification. Ms. Riccobono, on behalf of the NFB of Maryland, submitted a letter explaining that the online ballot marking tool is now accessible and would allow blind and other print-disabled voters to cast their absentee votes privately and independently. The Maryland Disability Law Center also submitted a letter explaining that the ADA and Section 504 require the Board to make the online ballot marking tool available to afford blind and other print-disabled individuals an opportunity to vote that is equal to that afforded to non-disabled voters, that is, to vote privately and independently.

32.	The Board did not vote to certify the online ballot marking tool. Consequently, the Board will not make the tool available to voters in the June 24, 2014 primary election. Instead, absentee voters will have to fill out their ballots by hand.

33.	Mr. Capone, Ms. Riccobono, and Ms. Toothman will either have to abandon their right to vote privately, independently, and/or as effectively as others or they will have to forfeit their right to vote.

## COUNT I
**Violation of Title II of the Americans with Disabilities Act**
**42 U.S.C. § 12131 et seq.**

34.	Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

35. The Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, guarantees equal access for qualified individuals to the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

36. Title II of the ADA mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

37. In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

38. Furthermore, such public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1). To be effective, the "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).

39. The Board, as an agency or instrumentality of the State of Maryland, is a public entity under Title II of the ADA.

40. Voting, including absentee voting, is a service, program, or activity provided by the Board.

41. Mr. Capone, Ms. Riccobono, and Ms. Toothman are individuals with disabilities under the ADA, as are the NFB's blind members.

42. Mr. Capone, Ms. Riccobono, Ms. Toothman, and many NFB members, are registered to vote in Maryland as either Democrats or Republicans and are thus qualified individuals entitled to the protections of the ADA.

43. The Board has failed and is failing to meet its obligations to provide voters who are blind or who have dexterity impairments with an opportunity to vote that is equal to the opportunity provided to other voters. In denying use of the online ballot marker tool, the Board has refused to provide an auxiliary aid or service that would allow Mr. Capone, Ms. Riccobono, Ms. Toothman, and NFB members to vote equally. Accordingly, the Board has excluded and continues to exclude Mr. Capone, Ms. Riccobono, Ms. Toothman, and NFB members from participation in, and denied them the benefits of or otherwise discriminated against them in, its service, program, or activity of voting.

44. As a result of the Board's actions, Mr. Capone, Ms. Riccobono, Ms. Toothman, and members of the NFB have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to the Board's program, service, or activity of voting. If there is no change in the status quo, Mr. Capone, Ms. Riccobono, Ms. Toothman, and members of the NFB will be denied their right to vote privately, independently, and as effectively as others in the June 24, 2014 primary elections and in future elections.

45. The Board's failure to meet its obligations to provide voters who are blind or have print disabilities with an equal opportunity to vote constitutes an ongoing and continuous violation of the ADA and its supporting regulations. Unless restrained from doing so, the Board will continue to violate the ADA. Unless enjoined, the Board's conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

46. Unless the requested relief is granted, Mr. Capone, Ms. Riccobono, Ms. Toothman, and members of the NFB will suffer irreparable harm in that they will be discriminated against and denied equal access to the fundamental right to vote.

47. The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

48. Mr. Capone, Ms. Riccobono, Ms. Toothman, and the NFB are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## COUNT II
### Violation of Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794

49. Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, as if alleged herein.

50. Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

51. Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such

assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . ." § 794(b)(1).

52. Such federally funded programs and activities may not, in providing aids, benefits, or services, "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may such programs and activities provide qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii).

53. The Board, an agency or instrumentality of the State of Maryland, receives federal grants and other financial assistance, thereby subjecting itself to the requirements of Section 504.

54. Voting, including absentee voting, is a service, program, or activity provided by the Board.

55. Mr. Capone, Ms. Riccobono, and Ms. Toothman are individuals with disabilities under Section 504, as are the NFB's blind members.

56. Mr. Capone, Ms. Riccobono, Ms. Toothman, and many NFB members, are registered to vote in Maryland as either Democrats or Republicans and are thus qualified individuals with disabilities entitled to the protections of Section 504.

57. The Board has failed and is failing to meet its obligations to provide voters who are blind or who have dexterity impairments with an opportunity to vote that is equal to the opportunity provided to other voters. In denying use of the online ballot marker tool, the Board has refused to provide an auxiliary aid or service that would allow Mr. Capone, Ms. Riccobono, Ms. Toothman, and NFB members to vote equally. Accordingly, the Board has excluded and continues to exclude Mr. Capone, Ms. Riccobono, Ms. Toothman, and NFB members from

participation in, and denied them the benefits of or otherwise discriminated against them in, its service, program, or activity of voting.

58. As a result of the Board's actions, Mr. Capone, Ms. Riccobono, Ms. Toothman, and NFB members have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to the Board's program, service, or activity of voting.  If there is no change in the status quo, Mr. Capone, Ms. Riccobono, Ms. Toothman, and members of the NFB will be denied their right to vote privately, independently, and as effectively as others in the June 24, 2014 primary elections and in future elections.

59. The Board's failure to meet its obligations to provide voters who are blind or have print disabilities with an equal opportunity to vote constitutes an ongoing and continuous violation of Section 504 and its supporting regulations.  Unless restrained from doing so, the Board will continue to violate Section 504.  Unless enjoined, the Board's conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

60. Unless the requested relief is granted, Mr. Capone, Ms. Riccobono, Ms. Toothman, and many NFB members will suffer irreparable harm in that they will be discriminated against and denied equal access to the fundamental right to vote.

61. Mr. Capone, Ms. Riccobono, Ms. Toothman, and the NFB are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Kenneth Capone, Melissa Riccobono, Janice Toothman, and the NFB request that this Court enter judgment in their favor and award them the following relief:

    a. A preliminary and permanent injunction prohibiting Defendants from violating the ADA and Section 504 and requiring the Board to make the online ballot marking tool available for the June 24, 2014 primary election and all future elections;

    b. A declaration that Defendants have and continue to violate the ADA and Section 504;

    c. An award of Plaintiffs Mr. Capone, Ms. Riccobono, Ms. Toothman, and the NFB's reasonable attorneys' fees and costs; and

    d. Such other and further relief as the Court may deem just.

Respectfully submitted,

/s/
Daniel F. Goldstein, Fed. Bar No. 01036
Jessica P. Weber, Fed. Bar No. 17893
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
dfg@browngold.com
jweber@browngold.com

*Counsel for Plaintiffs*

May 19, 2014