IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, INC., *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. 14-1631-RDB |
| LINDA H. LAMONE, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiffs, by their undersigned counsel, hereby oppose Defendants' Motion for Summary Judgment. Defendants continue to misinterpret the law and have offered no new evidence to support their arguments. Because the record with respect to Defendants' affirmative defense remains the same as it was at the preliminary injunction hearing, the Court should deny Defendants' summary judgment motion and instead grant summary judgment in favor of Plaintiffs.

**ARGUMENT**

**I.     Plaintiffs are denied meaningful access to Defendants' voting program.**

Defendants repeat the same wrong-headed argument regarding meaningful access that they asserted in their preliminary injunction briefing, one that boils down to this: to have meaningful access to voting in Maryland, all Plaintiffs need is to have their votes counted, regardless of the indignities they must endure in casting their votes. This argument is all too familiar: if the bus transports you from point A to point B, you are not harmed by being relegated

to the back of the bus.  By Defendants' logic, the relevant service or program is simply depositing passengers at their destination, not ensuring them equal treatment while riding to their destination.

The Supreme Court firmly rejected this argument in the disability context in *Tennessee v. Lane*, 541 U.S. 509, 514 (2004), where it held that even though the plaintiff could access the courthouse by crawling up two flights of stairs or allowing court officers to carry him, his right to equal access under the ADA had been violated.  Similarly, in operating a voting program in which certain individuals with disabilities have no option for voting privately and independently at all and others with disabilities cannot partake in the no-excuse absentee voting that those without disabilities freely enjoy without sacrificing their privacy and independence, Defendants violate Plaintiffs' rights under the ADA and Section 504.  Defendants would write the "meaningful" out of "meaningful access."[1]

---

[1] As the Tenth Circuit explained in *Chaffin v. Kansas State Fair*:

> The Fair states that as long as Plaintiffs had "access" to the State Fairgrounds and programs and services at the Kansas State Fair, they could not have been "excluded from" or "denied the benefits of" the Fair. We reject the argument that the ADA requires no more than mere physical access. Instead, we have held that the ADA requires public entities to provide disabled individuals "*meaningful* access" to their programs and services. *Patton v. TIC United Corp.*, 77 F.3d 1235, 1246 (10th Cir. 1996) (emphasis added); *see also Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (holding that although deaf inmate could physically attend prison activities, he did not have "meaningful access" without a sign language interpreter). . . . We therefore do not agree with Defendants that mere physical presence on the fairgrounds—at least when coupled with being effectively trapped in a handicapped section, unable to leave for food or to use the restroom, unable to view the stage, and subjected to being climbed over, stepped on, and bumped into by other attendees—amounts to anything other than a denial of the benefits of the fair.

348 F.3d 850, 857 (10th Cir. 2003), *overruled on other grounds by Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 n. 4 (10th Cir. 2012).

As this Court has already held, "the plaintiffs have adequately shown that they will be deprived of equal access to the right to use the absentee ballot in the June 24, 2014 Maryland primary if they were not to be afforded access to the online ballot marking tool" and that the public interest is served when "people with disabilities can vote privately and independently by absentee ballot."  Tr. of June 11, 2014 Hearing at 63:3-20, *Nat'l Fed. of the Blind v. Lamone*, No. 14-1631 (hereinafter "6/11/14 Tr."), ECF No. 26-2 at 5.  Defendants have put forth no new facts or arguments to give the Court reason to stray from these earlier holdings.

As argued in Plaintiffs' Memorandum in Support of Preliminary Injunction and Hearing Brief and Memorandum in Support of Permanent Injunction, meaningful access does not mean relying on the kindness, availability, and accuracy of others to cast the votes of individuals with disabilities for them, whether voting in-person or by absentee ballot.  This argument is supported by the more recent trend of case law, cited in Plaintiffs' previous briefing, as well as by the new Department of Justice regulation, 28 C.F.R. § 35.160 (b)(2), which emphasizes that protecting the privacy and independence of individuals with disabilities is critical in determining whether an auxiliary aid or service is effective.  By the plain meaning of 28 C.F.R. § 35.160 (b)(2), methods of voting that require voters with disabilities to sacrifice their privacy and independence are ineffective and thus unequal.  Accordingly, where an auxiliary aid exists that would afford voters with disabilities an opportunity to vote privately and independently, and thus provide them with meaningful access to Defendants' voting program, it must be made available.

II. **Defendants' assertion that bypassing the State's certification requirement would constitute a fundamental alteration of the voting program ignores the supremacy of federal law.**

Defendants once again assert that an order from this Court requiring that the online-ballot-marking tool be made available to certain voters with disabilities would fundamentally

3

alter the State's voting program because it would contravene Maryland law, which requires the State Board of Elections to certify the tool before making it available to voters. *See* Md. Code Ann., Elec. Law § 9-308.1. As this Court has already held, however, the State's "compliance with its own laws and procedures . . . cannot trump the federal dictates of the Americans with Disabilities Act and [t]he Rehabilitation Act," 6/11/14 Tr. at 63:21-24.

This holding is in line with the conclusions of every federal appellate court to have addressed this issue. *See Mary Jo C. v. New York State and Local Ret. Sys.*, 707 F.3d 144, 163 (2013); *Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1232-33 (10th Cir. 2009); *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996); *Quinones v. City of Evanston, Ill.*, 58 F.3d 275, 277 (7th Cir. 1995); *see also Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233 (4th Cir. 2001) (holding that the ADA's attorneys' fees provision could not be overridden by contrary Virginia state law because "the Supremacy Clause mandates that federal law supersedes state law that either directly or by implication conflicts with federal law"). Therefore, creating an exception to Maryland law to allow for federally-mandated access to the online-ballot-marking tool for individuals with disabilities who would benefit from use of the aid cannot form the basis of Defendants' fundamental alteration defense.

## III. Defendants offer no evidence in support of their affirmative defense.

Despite now having had the opportunity to take discovery and engage an expert witness, Defendants offer no more of a record on supposed security concerns over the online-ballot-marking tool than they put forth in their preliminary injunction briefing. That is, the record is still completely devoid of any admissible evidence regarding the ballot-marking tool's alleged security deficiencies. Although Defendants now provide a lengthy explanation of the security concerns of Maryland legislators and Board member David J. McManus, Jr., the concerns of individuals who are not experts in the fields of computer or internet security do not constitute

evidence that the online-ballot-marking tool poses a legitimate security threat to the Board's voting program or to Maryland voters.

Furthermore, the letters that Defendants have attached as exhibits to their summary judgment memorandum, claiming that the ballot-marking tool (or, more accurately, the online delivery of absentee ballots) is insecure, constitute inadmissible hearsay. *See* Fed. R. Evid. 801. They cannot be considered for the truth of the matter they assert. If Defendants wished to put forth the arguments contained in these letters, they should have designated an expert witness to make those arguments. Instead, Defendants are left with a record that provides no support for the contention that the ballot-marking tool is insecure—a contention that Defendants do not even endorse. Defendants, therefore, have no evidence to support their affirmative defense that allowing individuals with certain disabilities to use the online-ballot-marking tool would be unreasonable, constitute a fundamental alteration of the voting program, or create an undue financial or administrative burden for the Board. *See* 28 C.F.R. § 35.164.

## IV.     The online ballot marking tool qualifies as an auxiliary aid.

With a fine disregard for the broad language of the ADA defining auxiliary aids and services, in part, as "other effective methods of making visually delivered materials available to individuals with visual impairments . . . and other similar services and actions," 42 U.S.C. § 12103(1), and the regulatory command that a "public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity," 28 C.F.R. § 35.160(b)(1), the Board offers the suggestion that an auxiliary aid cannot be used for a single purpose or be usable by others. This *ipse dixit* argument is offered even though an aid tailored to the occasion would seem well within the spirit and requirements of the statute and

5

even though, like audio recordings, ramps, and written materials, the aids may be useful as well to persons without disabilities.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Plaintiffs' preliminary injunction briefing and Hearing Brief and Memorandum in Support of Permanent Injunction, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment and grant summary judgment in favor of Plaintiffs and order Defendants to make the online-ballot-marking-tool available for all future elections to absentee voters with disabilities who would benefit from access to the tool.

Respectfully submitted,

/s/
Daniel F. Goldstein, Fed. Bar No. 01036
Jessica P. Weber, Fed. Bar No. 17893
Brett D. Watson, Fed Bar No. 19067
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
dfg@browngold.com
jweber@browngold.com
bwatson@browngold.com

Dated: August 11, 2014                           *Counsel for Plaintiffs*